You have our last case of this four day sitting. It's number 20-60331 Volvo Group North America versus International Union of Automobile Aerospace and Agricultural Implement Workers of America, the UAW, basically. We'll first hear from Appellants Council. Good afternoon, your honors. This is Charles Roberts. I'm here on behalf of Volvo Group North America. In this case, the complaint at the pleading stage based on the conclusion that it was being asked to issue an advisory opinion and that there was no actual case or controversy. What we contend is that that conclusion is based on a clear misreading of the complaint. An advisory opinion case is one in which the parties asked the court to tell them what will be the future or the hypothetical future course of action. If X occurs, what are the legal consequences? And in an actual justiciable case, however, the court's being asked to tell the parties what are the legal consequences of their actual past and ongoing course of conduct. So you may be asking for specific legal relief, or you may be asking for equitable relief, or even declaratory relief. But the case says X has occurred, and what are the consequences of that? And we contend that we fall squarely into the latter category. Volvo has alleged that it and the union are parties to a collective bargaining agreement. It's an actual collective bargaining agreement. This agreement obligates Volvo to pay the wages of a full-time union shop chairperson. This individual does not perform any work for Volvo. He performs only on behalf of the union. He acts under their direction and control. So these are an ongoing obligation that has already occurred. This is not future conduct. It's past conduct. Mr. Roberts, you say it's an ongoing obligation. It looks to me, if I'm reading things right, that the CBA expires in a couple of weeks. And then back, I guess, starting in October, the renegotiation began. What is the status? I mean, is this case about something that's expiring in, I think it's December 16? You had the question of possible mootness, and I plan to address that. I'll address it right now in light of your question. Yes, the contract has an expiration date of December 16 of this year. Negotiations actually began earlier this week, and the CBA is negotiating, and will be negotiating next week. Based on what I understand, there have been some proposals on this particular issue. Neither party has reached an agreement. What I would say with regard to mootness, obviously, at this point, I don't know how it's going to turn out. If, in theory, if in theory, the parties were to agree on some language that's revised and that they agree is legal, then obviously, this case would become moot because we're only talking about future relief here, injunctive relief. We don't, there's no damage claim or anything of that nature. What I would say, though, is that this court, if this is not the first of these cases, you may have recognized there are cases that are pending in the Fourth Circuit from Maryland and Virginia. And there were negotiations last fall in Maryland that resulted in the parties being unable to resolve the agreement and basically continuing the contract with an agreement that it would be subject to the outcome of litigation. What I would say is, if that occurs here, this court's en banc opinion in Mr. versus Southwest Airlines, which was 875 Fed Second 1129, makes it clear that in a labor context, if the parties renew their agreement, without resolving the underlying dispute, that the case become moot. Now, if the party if by some chance the parties reach agreement on what they agree is legal language, then we would certainly advise the court of that. And, and we can see that at that point, it would likely be moot. Right? I mean, it seems to me there's two possibilities. One, the new CBA doesn't have this language that you think gives rise to an illegal obligation, and then it would seemingly be moot. I think you recognize that. The other possibility is this new contract continues the same, includes the same provision that you now say is illegal. So then it brings up a lot of these issues the district I mean, how can you go to federal court complaint that you know now that you think this is illegal? I mean, maybe when this contract that's still, you know, has a few weeks remaining, maybe you didn't realize it. But you realize now that in your view, this is an illegal contract. So how if you agree to it again, I mean, that just seems problematic from the to then seek a declaratory judgment saying what we agreed to knowing that it was illegal should be struck down by the court. I mean, I would address that in two ways, your honor. First, I would say that look, I'd ask the court to look at the Southwest Airlines case I mentioned, which is a non bonk decision from 1989, which Judge Jolly wrote the majority opinion and addresses a similar issue where the parties had an underlying dispute over a collective bargaining agreement, they renewed it without resolving the underlying dispute, and the court found that the case remained justiciable. There's also a Ninth Circuit, but did the party say that it was a criminal act what they were agreeing? What they were again agreeing to? In that case, but there's another case that I'll cite to you is a Ninth Circuit decision in machinist union versus BF Goodrich. Honestly, don't have that case site, but it's from the Ninth Circuit. It's the International Association of machinists versus BF Goodrich, a Ninth Circuit case where the same legal issue was presented that's presented this case. And in that case, the party while the case was pending in the Ninth Circuit, agreed on the on the kind of a new contract, and renewed the language but did not resolve the underlying conduct or the underlying legal issue. Issue that here is whether paying the representative violated federal law and the court held that that did not move it. Also, I sense from your questions that I understand, perhaps concern about where's the equity perhaps in someone agreeing to something that they believe is illegal and then asking the court to intervene. There's another case. We wrote our briefs mootness was really not on the table. So having addressed those in the brief, but I would point out the employing plasterers case it is cited in our brief is an older case to 279 Fed Second 92 from the Seventh Circuit. And in that case, the court specifically addressed that equitable issue whether an employer by virtue of having, in essence participated in it, still had standing, if you will, to present the case and found that it did. So we would argue, I'd like to point out a couple of practical considerations, too, because this is what happened in Maryland is contracts are a little bit different when we get, let's say we get to December the 16th. And we don't have an agreement between the parties. There's several things could happen. One, the parties could agree to continue the existing contract while they continue to negotiate to either party would have the right to terminate the contract. At that point, negotiations would not stop, they would continue, but the there would be several options, the union could engage in a strike, which is what it did back in Maryland last year for two weeks. But here's the here's the point I'd like to make is a labor contract, even when it expires, the legal obligation continues as a matter of law as part of the status quo. So we could not just unilaterally discontinue making these payments. At that point, unless we reached what's called an overall legal impasse. And that's a very difficult thing to reach it doesn't it only occurs when both sides completely stop moving. And it's a thing. It's a state that can actually take a year or more to reach. So I point out that when we when we filed this action, we were 18 months or so 15 months or so from the expiration of the contract. And it was, you know, our hope that we would have some decision before we got to this point, unfortunately, because of the nature of the proceedings and stuff, we don't have that. But that's the nature of and that's the problem with collective bargaining agreements is that you they're typically a three year, not always, but typically, the contracts. And so with the litigation process, you're constantly having situations where you're, you're in the midst of the negotiations, and you don't have a resolution to your problem. This is a really strange case procedurally. I mean, can you point to a case where a party is asking a court not to enjoin the other side, but to enjoin itself from doing something? Well, I think the two cases that are closest are cited in our brief ones, the the Seventh Circuit employing flaskers case where it was a participant in that and the other one is the Second Circuit's longshoreman's case versus sea train. In that case, they basically had an agreement between the union, it was something of a friendly lawsuit in the sense that both parties were participants in it. And the court found that they were entitled to, to continue to pursue the case and that we're point out, Your Honor, that we're not just asking that we be restrained, we're asking also that the union be restrained, this is a bilateral obligation. So we have an agreement, you know, that that is allegedly, according to us unlawful, but the, the payment, it's not just merely the payments that are illegal, it's the acceptance and receipt of those payments. And it's the agreement itself, the mere agreement to make the payment. So is there anything in the record here that shows the union has threatened to sue or, or is likely to if you stop making the payments? Well, of course, this is at the complaint stage, Your Honor, I mean, and our complaint alleges that we approach the union, not only at this location, but at multiple locations, in advance of negotiations and assault to negotiate, or to modify these provisions and were rebuffed by the union on the grounds that they took the position that these are long standing, well understood provisions that have long been accepted legally. So I think, I think at this stage, that it would be premature to say that that you can dismiss based on the notion that the union somehow would agree to it. I would say that in the district court, they've acknowledged that they would likely pursue some kind of grievance or action, if they were, if you were to do so. So I think at this stage, the record would not allow the court to conclude that there's no controversy because the union would actually yes, and in what we did. I'd like to I think the questions the court asked leads to a couple of other quick points in the time I have left. One is the judge, the district court never really addressed the statutory claim. I mean, we've alleged specific statutory violations, the statute expressly authorizes the court to restrain violations. And the court focused instead on the declaratory request, which this case really, yes, we pled for and yes, we made some references to the fact that section 302 is a criminal statute and that there can be potential criminal prosecution, but this case was never about avoiding criminal prosecution. This case is a statutory enforcement claim that's based on actual alleged violations of a federal statute. So we think that that got off course, if you will, I would finally in the last minute or so I have is that if if Volvo doesn't have standing, or let's say if Volvo and the union because they're, let's call them willing participants in this agreement, that if they don't have standing to bring this type of action, then who does they're really you're talking about the two parties directly to the agreement. And we're not a third party interloper. And the only other group of people who conceivably could have standing would be an employee. But in the collective bargaining context, employees are not parties to the agreement, they're represented by the union, and their bargaining rights belong to the union. Typically, employees don't have standing. We're losing you, Mr. Roberts, I don't know if you can speak more into your mic, you're going in and out. Typically, is that better? A little bit, but it's it's still tough to it's just been the last minute or so it's gotten much if I can increase my volume. Now, let me try to help  trying to say was that, if the employer and the union don't have standing, it's hard to see who would typically employees are, unless there's been to represent, so we would contend that in this type of case, it would create a big void if employers and unions did not have standing simply because they were participants in the allegedly unlawful agreement. I see my initial time is up. I think I do have a few minutes or five minutes for rebuttal. So unless the board has a question, I'll stop at this point. All right, and you do have your five minutes at the end. We'll now hear from the union, Mr. Roth. You need to unmute, I think. Yeah. Thank you. Thank you, Your Honors. May it please the court. Judge Costa, I think you cut right to the chase at the planning on doing likewise. I don't know technically whether you could say the expiration of the agreement moots the case because I think a prerequisite for mooting cases that there's a live case to begin with. And I think for all the reasons the district court laid out in his excellent opinion, there's plainly no case or controversy here. There's just a disagreement of a matter of laws. It's asserted we've clearly misread the complaint, but the complaint, the operative paragraph of the complaint is paragraph 12, which alleges that there's an actual controversy because the two sides have different legal opinions. Well, that happens a lot. And you know, you have to have some hardship. You can't just say I disagree with somebody, please come in court and resolve it. But putting all that aside, there clearly is no hardship now if there ever was that would give rise to a case or controversy. If the legal opinion of the company is now after even though they've done this for 40 years, and they haven't cited any developments that would support their change of heart, it seems very strategic in order to gain leverage in the bargaining, but even assuming the good faith change of position. They're under no complaint, at least in the as I read the briefs, and maybe some paragraphs in the complaint was well, we're under so we're between a rock and a hard place. You know, we, if we if we engage in self help, and we stop complying, they can accuse us of an unfair labor practice, we'd have to defend on illegality grounds, they could bring a breach of contract. Now they're at the bargaining table over a new contract. So I'm sorry, you're all right. I think you're muted. Yeah, Judge Weiner, you're you're muted. If you wanted to say something. Am I back in? Yes. Now we can hear you. Okay. No question. Are you? Okay. Well, the the only thing I was wondering is, if the Maryland case is still ongoing, what would be wrong with our transferring this case up there? So it can, we can you can have? It is not it is not your honor, I apologize, I probably should have put in a 28 J letter, but very recently, and that's under appeal to that was the second of two cookie cutter lawsuits brought by Volvo, alleging the exact same. Basically, the cookie cutter exact same allegations that was recently dismissed as well, for lack of jurisdiction. So there are three cases that were brought, they were all dismissed, for lack of jurisdiction. And that both of the other one was from the Western District of Virginia relied on essentially the same grounds as the other two courts in the court here, with some minor differences. Those other two were on those other two are on appeal to the that's the Mac, the Mac decision out of Maryland was very recent. And so the briefs have not been filed. But yes, that was Volvo appealed that as well. So there are two, they haven't been consolidated or anything. But there are two, there are two Fourth Circuit cases. The first one was briefed around the same time as this case, but the court hasn't acted on or even scheduled oral argument at this point. What the Maryland case, what was the basis for dismissal? The same rationale here? Well, you know, the court basically just said, you claim there's a there's a risk of criminal prosecution. There is none on the facts on the undisputed facts. There's never been a prosecution on this, even though it's a fairly common contractual procedure. But now you say your injury is, is the financial harm? Well, you just read that as Mr. Roberts alluded to. Strangely enough, he agreed to re up that agreement. In Mac notwithstanding these lawsuits, and they thought that they could then go to the district court and say, well, you know, we just decided to re up it so we can get you to decide it rather than actually fight it at the bargaining table, which is what they need to do. In my view, there's very well established law in the Supreme Court. This is not brief either. But Machinists v. Wisconsin Employment Relations Commission 427 U.S. 132 at 151 to 55. And Golden State Transit Corp, the city of Los Angeles, 493 U.S. 103 at 110 to 11. They both hold that as long as you're in the range of arguable legality, the parties have to be left to their own devices to the federal courts, nor the state courts can intervene. Now. Now, Mr. Roberts, the union in the Mac case, and as I'm about to point out here as well, they don't agree that there's any legality issue with respect to full time. But in an effort to get around this issue and to get to other issues, the union in Maryland and recently here as well offered to move away from a full time arrangement to a part time arrangement. It's a little more generous part time arrangement that the union has proposed and the one that this court upheld as lawful in the in the NLRB v. BASF Wyandotte case 798 F second 849, which is cited in Volvo's brief the court that was a 20 hour a week, the union has proposed here as their initial proposal, and they may have additional wiggle room. They have proposed just on Monday when the bargaining began to move from the 40 hours for the shop chairperson to 32 hours a week. We think there's no issue as to legality as to that. But my final point would be the clinching point, I believe is, if Volvo believes that they know they can certainly stand on not agreeing to anything, but if they don't want if they if they say 32 is also illegal, they've never they didn't make that claim in the Mac case in out of Maryland, but if they make that case, they can they can refuse to agree to it on that ground. And if the union, you know, doesn't back down, then there might be a controversy, which which, you know, but this is all rank speculation regarding unfolding events. So I think it's fair game to point out that the union is showing flexibility in the bargaining table, but how how this is all going to unfold over the course of this bargaining, whether it's going to unfold in a manner similar to what happened in Maryland, which led the court to say, What are you doing, you know, you're just basically agreeing to re up it. And then you're saying, you know, you want to come to us for relief, because you're saying that that that raises a cloud over your head of illegality, the court was having none of that. I think the court if that's the way they proceed, I think the court here, if they refile, there's no there's certainly no basis for reviving this case, there never was the reasons the district court pointed out. But they will make if they if they believe that the union is insisting on something at the bargaining table, they have all their rights. But that's speculative at this point. I would add just, you know, to square the circle on that point, that if the union were insisting, either through, you know, through a strike, or just refusing to agree to anything less than, you know, getting to an impasse on an illegal subject, under that case, this, this court's case that I just cited, the remedy for them would be to go to the National Labor Relations Board and say, they're insisting on an illegal subject, and the board could would have remedies, including an injunctive remedy, under Section 10, J of the National Labor Relations Act, if there were any basis for a again, I think there clearly wouldn't be but so that the cases at once almost both moot and premature. The case that exists on the books currently, I think should be affirmed. It was right. But events have, I mean, I think, Judge Costa, your point is whether this neatly fits into a mootness rationale or not. It's indisputably the case that events have overtaken the situation. And whether or not you know, the parties reach an agreement, whether or not there's some further litigation by Volvo, if they're at loggerheads, in the manner I suggested, they might end up being the union certainly, you know, anxious to avoid that, which is one of the reasons they've offered to move off the 40 that they, that they now all of a sudden are claiming is illegal. So I think I think the bottom line from our perspective is, is the decision below should be affirmed on the grounds and then the court should say to the extent that, you know, there's something that happens in the you know, supports a legal claim, you could bring that in the appropriate forum, we believe that would be the appropriate forum would be the National Labor Relations Board. We don't believe the appropriate forum would be another district court case, because if they were trying to seek an injunction, not from the board, but from from the court, the Sixth Circuit recently held in the in the Ohlendorf case, which was relied on, in part, by the Western District of Virginia, as correctly decided, there's no private right of action, the only person who can bring an action for injunctive relief under the statute is the Attorney General, because it's a criminal statute. And it's really within the realm of the Attorney General, not a private party who, as I think this case illustrates, can can try to use that statute to gain a leg up at the bargaining table, whereas the Attorney General presumably would be neutral in a piece of law, he or she saw a violation of the statute could could could bring an action for injunctive relief if they felt the union was. So they would have two remedies actually go to the Attorney General for, you know, get them to seek an injunction under 302 E, under the Ohlendorf decision of the Sixth Circuit, or alternatively, they could go to the National Labor Relations Board and seek a 10 J injunction as 29 USC section 160 J. I think that that's pretty much all I have to say unless the court has questions. I did want to just though jump in to address Judge Willits question, because you asked my opposing counsel whether he could cite you to a case where a party and it strikes me as bizarre on his face for a party to go in saying, Your Honors, we are been doing this for 40 years, our attorney has advised us that this is unlawful, we could subject us to political to criminal prosecution, please enjoin us from violating the law rather than just saying, Alright, well, my attorney has advised me this is unlawful, I'm going to stop. I'm not going to do it because I'm not going to subject myself to criminal prosecution. So it's a bizarre thing. And the employers case, which he cites, there was actually some suggestion at the appellate level that there was an injunction sought by the party against itself, but there was certainly no injunction granted. And we have not, through exhaustive research found any any case in the history of American jurisprudence, in which a party has both sought and successfully obtained an injunction to stop it. And it's too cute by half to say, well, we're also seeking to enjoin the union. There are two sides of the same coin. I mean, it's really just an end around the prescription, if you will, of enjoining yourself to say, well, all right, don't enjoin us for making the payments join, join the union from the passive active receiving them. That is just another way of getting what would in effect because that's what they want is to be able to stop the payment, it would be an effect, getting an injunction against themselves and for all intents and purposes. Unless the court has any other questions, that's all I have. All right. Thank you, counsel. Mr. Roberts, you get the last word, five minutes. Yes, let me just try to take that somewhat in reverse order. With regard to the the Olin Dorf case, which he cited about the question of the question of private right of action, that's not a jurisdictional issue and clearly cannot be determined until you exercise jurisdiction. I think the same would be true with regard to his arguments about about the appropriateness of injunctive relief. Again, injunctive relief is, it's a we're at the pleading stage, we're not at a question of whether what the evidence will ultimately establish or what injunctive relief might be appropriate. So unless you can say that there's no conceivable way, the court could be could craft injunctive relief, I don't see how that creates a As for the NLRB has no jurisdiction over this case, this, this is a federal statute that is not part of the National Labor Relations Act. The board doesn't have any jurisdiction to construe this. It's a federal statute that gives the district courts jurisdiction to restrain violations. The union's argument appears to be, as I as I understood it, you can never have this case will never be right. It's either always premature, or it's always in the midst of bargaining, or it's always after you've already agreed to it. So in essence, the party, it would give the the parties carte blanche to agree to an unlawful agreement and no one could ever challenge. Well, actually, in the bargaining context, if the union's insisting on an illegal position or provision, that couldn't be the basis for an NLRB unfair labor practice finding if they insisted the impasse on that specific provision, they're never going to do that. Because why would they they would know it was unlawful. There's always another issue that they can link it to proving that they insisted the impasse on it. It's the elephant in the room. It's the issue that the union is most important to the union as an institution, but highly unimportant to the employees. So it's, it's, it's, there's absolutely no way you could ever get this case before the NLRB. And again, the NLRB doesn't have jurisdiction to determine to determine whether a 302, 302 violation occurs. So in essence, what we were left with is a is a statute that really has no meaning unless, unless some criminal unless criminal complaint is brought by the Attorney General, there's, there can never really be an injunction. That's what usually happens with criminal statutes, the, the enforcing prosecutor has to do something. I mean, there's probably all kinds of stuff going on in Houston right now that's illegal until a prosecutor does something about it. That's, I guess what's unusual about that. What's unusual about it is that that that it's not just restricted to a criminal remedy. There's an injunctive remedy, which clearly, in my mind, at least implies some kind of civil remedy. So if, if, if that paragraph is section 302 E, as in Edward did not exist, and did not specifically authorize the district courts to injunction relief, it would be a different matter. But in essence, we're saying there's a remedy without, without a cause of action is what you would in essence be be finding. Finally, and I sort of I mean, I addressed it, I believe in the in my opening, but this case has, as I said before, has never been about criminal prosecution, we allege specific violations of a of a federal labor statute, they already occurred, they're continuing to, we're at the pleading stage. And yet the court is saying that that doesn't create a case or controversy. I think that I just don't see how that's possible. If you're alleging actual ongoing violations of a federal statute that authorizes injunctive relief, it seems almost inevitable that their subject matter, perhaps there are defenses, perhaps the court might ultimately have discretion to deny injunctive relief. But we're again, we're saying that the case simply can't be presented. And we just strongly believe that that's that's wrong and would ask the court to review and, and remand with instructions to resume processing this case. Thank you. All right, thanks to both sides. But given the ongoing negotiations, I would ask if if either side thinks there's some development in the negotiations, and we have not yet issued an opinion that you think might matter at all, be significant, let us know. Of course, we'll figure out whether that has legal significance or not. But if you think there is a development, certainly, if there's a new CBA reach, that would be something I think we would at least want to know about. And then you know, we'll sort out whether it does affect this case or not. But then you can just submit that as a 28 J letter if there is any development like that. So thanks to both sides. That concludes today's sitting and includes the whole week. So the court is now in recess and council may be exit the zoom call. Thank you.